FILED

2015 Dec-18  AM 09:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CHARLES HENRY SULLIVAN IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:14-cv-02218-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Charles Henry Sullivan IV brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and Supplemental Security Income ("SSI").  (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for disposition of the matter.  (Doc. 9).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).   Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be reversed and remanded.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I.  PROCEDURAL HISTORY

In May 2013, Sullivan filed applications for disability insurance benefits and SSI, alleging disability beginning June 1, 2005.  (R. 135-51).[2]  His applications were denied by the State Agency.  (R. 53-54).  He then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 18, 2014.  (R. 35-52).  Sullivan, his counsel, and a vocational expert attended the hearing.  (R. 35).  The ALJ issued a decision on May 14, 2014, finding that Sullivan was not disabled.  (R. 18-34).

Sullivan requested the Appeals Council review the ALJ's decision.  (R. 12). The Appeals Council denied Sullivan's request for review on September 19, 2014. (R. 1-5).  On that date, the ALJ's decision became the final decision of the Commissioner.  Sullivan then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

# II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[2]References herein to "R.___" are to the page number of the administrative record, which is encompassed within Docs. 4-1 through 4-11.

standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42

U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that

results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five

step analysis.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the

Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful
> activity; (2) has a severe medically determinable physical or mental
> impairment; (3) has such an impairment that meets or equals a Listing
> and meets the duration requirements; (4) can perform his past relevant
> work, in light of his residual functional capacity; and (5) can make an
> adjustment to other work, in light of his residual functional capacity,
> age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20

C.F.R. § 404.1520(a)(4)).  "An affirmative answer to any of the above questions

leads either to the next question, or, on steps three and five, to a finding of

disability.  A negative answer to any question, other than step three, leads to a

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered
binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV.  FINDINGS OF THE ALJ

Sullivan was 28 years old on his alleged onset date and 37 years old at the time of his hearing before the ALJ. (R. 135). He has a high school equivalency degree and served in the military. (R. 193). He has past relevant work experience as a delicatessen stocker, restaurant floater, and wire system installer. (R. 46-47). He alleges that he has been unable to work since June 1, 2005, due to post-traumatic stress disorder ("PTSD"), depression, anxiety, heart attacks, and high blood pressure. (R. 135, 143, 192).

The ALJ found that Sullivan had severe impairments of ischemic heart disease, hypertension, anxiety disorder, and affective disorder, but that his impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[4] (R. 20, 24).

---

[4]The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then found that Sullivan had the residual functional capacity[5] ("RFC") to perform medium work, subject to the following limitations: he can frequently climb ramps and stairs, but never climb ropes, ladders, or scaffolds; he should avoid concentrated exposure to extreme heat and cold; he should avoid all exposure to unprotected heights and dangerous, moving, and unguarded machinery; he should avoid concentrated exposure to dust, fumes, gases, and poor ventilation; and he should have casual and non-intensive interaction with co-workers and the general public.  (R. 26).  The ALJ further found that Sullivan is able to understand, remember, and carry out complex tasks if they are broken down.  (*Id.*)

The ALJ determined that Sullivan could not perform his past relevant work as a delicatessen stocker, restaurant floater, and wire system installer, because the RFC for that work exceeded his current RFC.  (R. 29).  However, based on the testimony of the vocational expert, the ALJ found that there are other jobs in the national economy that Sullivan is capable of performing, including packager, bander, and general helper in manufacturing.  (R. 30, 48-49).  The ALJ thus concluded that Sullivan was not disabled.   (R. 30-31).

---

[5]Residual functional capacity is the most a claimant can do despite his or her impairment(s).  *See* 20 C.F.R. §404.1545(a)(1).

6

# V.  DISCUSSION

Sullivan argues that the Commissioner's decision should be reversed for two reasons.  First, Sullivan argues that the ALJ did not present a proper hypothetical question to the vocational expert based on the medical evidence in the record.  (Doc. 10 at 10-18).  Second, Sullivan argues that the ALJ was biased against him.  (Doc. 10 at 18-28).  The Commissioner responds that the ALJ properly evaluated the medical evidence in the record and properly assessed Sullivan's RFC, and that Sullivan has failed to show any bias on the part of the ALJ.  (Doc. 11 at 5-19).

## A.    The ALJ's Hypothetical Questions to the ALJ

As noted above, once a finding is made that a claimant cannot perform his past work, the burden shifts to the Commissioner to show that there is other work in the national economy that the claimant is capable of performing.  *Foote*, 67 F.3d at 1559.  "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture."  *Wilson*, 284 F.3d at 1227.  One method of determining whether the claimant is able to perform other work is through the testimony of a vocational expert.  *Id.; Phillips v. Barnhart*, 357 F.3d 1232, 1440 (11th Cir. 2004).  "In order for a vocational expert's testimony to constitute substantial evidence, the

ALJ must pose a hypothetical question which comprises all of the claimant's
impairments." *Wilson*, 284 F.3d at 1227; *Winschel v. Comm'r of Soc. Sec.*, 631
F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson*).

Here, the ALJ asked the vocational expert the following hypothetical
questions (among others) at the hearing:

> Q. ... Let's assume we have a hypothetical individual with the
> claimant's education, training, and work experience, who would be –
> Mr. Alpha, who would be limited to a maximum of a medium range
> of work as that term is defined under the regulations, would be
> limited to occupations that do not require the climbing of ropes,
> ladders, or scaffolds, and frequent climbing of ramps or stairs, would
> need to avoid dangerous moving, unguarded machinery or
> unprotected machinery or unprotected heights, would be able to
> understand, remember, and carry out complex tasks if broken out into
> smaller, simpler sections to be completed, would be able to – limited
> to casual, non-intensive interaction with coworkers or the general
> public.  Would Mr. Alpha be able to perform any of the past relevant
> work?
>
> A.  Kitchen helper, your honor.
>
> . . .
>
> Q.  Let's assume we have a second hypothetical individual with the
> claimant's education, training, and work experience.  He'll be Mr.
> Beta.  He has the same limitations as Mr. Alpha, except that he would
> need to avoid concentrated hot or cold temperature extremes, and
> would need to avoid concentrated dusts, odors, fumes, gases, or poor
> ventilation.  Would Mr. Beta be able to perform any of the past work?
>
> A.  No, your honor.
>
> Q.  Are there other jobs in the national or regional economies that a

person with those limitations could perform?

A.  And we're still staying at the medium level, am I correct?

Q.  That's correct.

A.  Okay.  A packager, hand, DOT 920.587-018, exertional level
medium and an SVP of 2, unskilled. ... Second, a bander, DOT
762.687-010, exertional level medium and an SVP of 2, unskilled. ...
And third, a general helper, manufacturing, DOT 809.687-014,
exertional level medium and an SVP of 2, unskilled.

(R. 48-49).  The second hypothetical question (regarding "Mr. Beta") tracked the

RFC finding in the ALJ's decision.  (*See* R. 26).

Sullivan argues that the ALJ's hypothetical questions to the vocational

expert did not account for all of his limitations and restrictions.  Specifically, he

argues that the ALJ's questions did not include "several of the significant

limitations that were given by Dr. [Robert] Estock," a State Agency consulting

psychologist who reviewed Sullivan's records and completed a mental RFC

assessment of Sullivan.  (Doc. 10 at 14).

The ALJ afforded "significant weight" to Dr. Estock's opinion, which she

noted was "consistent with the evidence of record."  (R. 29).  Dr. Estock

determined that Sullivan has "sustained concentration and persistence limitations,"

including moderate limitations in his ability to "carry out detailed instructions," to

"work in coordination with or in close proximity to others without being

9

distracted," to "complete a normal workday and workweek without interruptions from psychologically based symptoms," and to "perform at a consistent pace without an unreasonable number and length of rest periods." (R. 67). He opined that Sullivan"will be able to complete more complex tasks if they are broken down in smaller, simpler sections"; that Sullivan "will benefit from written instructions because of limited ability to concentrate and remember spoken instructions"; and that Sullivan "needs a well-spaced work environment" and "may sometimes react to stress with anger or panic." (R. 68).

Dr. Estock also determined that Sullivan has "social interaction" limitations, finding that Sullivan is moderately limited in his ability to "interact appropriately with the general public," to "accept instructions and respond appropriately to criticism from supervisors," and to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) He opined that Sullivan's "ability to interact with the general public will be inconsistent"; that "[s]upervision and criticism should be given in a manner that is supportive and nonthreatening"; and that Sullivan "can tolerate casual, non-intensive interaction with coworkers but may at times display anger or anxiety under stress." (*Id.*)

At Step Two of the evaluation process, the ALJ found that Sullivan had severe impairments of anxiety and affective disorder. (R. 19). Consistent with Dr.

Estock's RFC assessment, the ALJ then found at Step Three that Sullivan has moderate restrictions in social functioning and in maintaining concentration, persistence, or pace.[6]  (R. 25).  Sullivan argues that the ALJ's hypothetical questions to the vocational expert failed to account for all of the limitations identified by Dr. Estock in both of these areas.

With respect to social functioning, the ALJ's hypothetical questions to the vocational expert included the limitation of "casual, non-intensive interaction with coworkers or the general public," a limitation identified by Dr. Estock.  (*Compare* R. 47 *with* R. 68).  However, as Sullivan notes in his brief, the ALJ's hypothetical questions did not include Dr. Estock's assessment that he is "moderately limited" in his ability to "accept instructions and respond appropriately to criticism from supervisors" and did not include Dr. Estock's express limitation that "[s]upervision and criticism should be given in a manner that is supportive and nonthreatening."[7]  (R. 68).  In other words, the ALJ's hypothetical questions only partially addressed Sullivan's social functioning limitations.  The questions she posed to the vocational expert accounted for Sullivan's limitations in interacting

---

[6]The ALJ also found that Sullivan has moderate restrictions in his activities of daily living.  (R. 25).

[7]In her written decision, the ALJ expressly noted Dr. Estock's determination that supervision and criticism should be given to Sullivan in a manner that is supportive and nonthreatening.  (R. 24).

with coworkers and the general public, but did not account for his limitations in

responding to criticism and supervision.  Therefore, the vocational expert's

testimony does not constitute substantial evidence and is insufficient to support

the ALJ's determination that Sullivan can perform the jobs identified by the

vocational expert.  *See Winschel*, 631 F.3d at 1181 ("Because the ALJ asked the

vocational expert a hypothetical question that failed to include or otherwise

implicitly account for all of Winschel's impairments, the vocational expert's

testimony is not 'substantial evidence' and cannot support the ALJ's conclusion

that Winschel could perform significant numbers of jobs in the national

economy."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("[W]e

cannot assume that the vocational expert would have answered [the ALJ's

hypothetical question] in a similar manner had the ALJ instructed him to consider

all of the appellant's severe impairments.  Thus, we must conclude that the

Secretary failed to meet its burden of showing that the appellant could perform

other gainful employment in the economy.").

A case from the Southern District of Alabama is instructive.  In *Salter v.

Colvin*, 2014 WL 1315645 (S.D. Ala. Mar. 31, 2014), a consulting doctor (Dr.

Eno) opined that the claimant had moderate limitations in concentration,

persistence, and pace and could "understand, remember, and carry out very short

simple instructions and attend for two hour periods." *Id.* at **5, 8. The ALJ gave "significant weight" to Dr. Eno's opinion, noting that it was "the most consistent with the medical evidence." *Id.* at *6. At the administrative hearing, the ALJ asked the vocational expert hypothetical questions that included the limitation of "no complex or detailed job instructions," but did not include any limitation regarding the claimant's ability to concentrate for two-hour periods. *Id.* at *10. The court held that the ALJ's hypothetical questions did not fully account for the claimant's moderate limitations in concentration, persistence, and pace, finding that the ALJ "should have included in the hypothetical question[s] posed to the VE ... [the] more 'directed' moderate limitation (i.e., the ability to concentrate or attend for 2-hour periods) in concentration, persistence and pace ...." *Id.* The court thus concluded that the vocational expert's testimony was not "substantial evidence" and could not support the ALJ's conclusion that the claimant could perform the jobs identified by the vocational expert, warranting a remand. *Id.* at *11.

Here, similarly, the ALJ placed significant weight on the opinion of Dr. Estock, who determined that Sullivan had moderate limitations in his ability to interact with coworkers and the general public and in his ability to accept instructions and respond appropriately to criticism from his supervisors. The

ALJ's hypothetical questions to the vocational expert included the first limitation assessed by Dr. Estock ("casual, non-intensive interaction with coworkers or the general public") but did not include the second ("[s]upervision and criticism should be given in a manner that is supportive and nonthreatening").  Because the ALJ's hypothetical questions did not explicitly or implicitly account for Sullivan's limitation in responding appropriately to supervision and criticism, the vocational expert's testimony is not substantial evidence and the case is due to be remanded.

The Commissioner argues that "Dr. Estock, as a State agency non-examining consultant, was not a treating physician, and he would not be due the same special consideration that a treating physician would be due."  (Doc. 11 at 8).  This argument overlooks the obvious: regardless of whether Dr. Estock was due the same consideration as a treating physician, the ALJ determined that his opinion was consistent with the evidence of record and gave the opinion "significant weight."  (R. 29).  And nowhere in the ALJ's decision did she state that she was rejecting any portion of Dr. Estock's opinion.

The Commissioner also argues that "the ALJ's limitation to casual and non-intensive interaction with coworkers and the general public accommodated Dr. Estock's opinion that '[Sullivan] can tolerate casual, non-intensive interaction with coworkers but may at times display anger or anxiety under stress.'"  (Doc. 11

14

at 9).  The court agrees.  However, as discussed above, that limitation does not

accommodate Dr. Estock's additional assessment that Sullivan is moderately

limited in his ability to accept instructions and respond appropriately to criticism

from supervisors and that supervision and criticism should be given in a

supportive and nonthreatening manner.  (R. 68).  Again, the ALJ's questions only

partially–and inadequately–accounted for Sullivan's limitations in social

functioning.

With respect to Sullivan's moderate restrictions in maintaining

concentration, persistence, or pace, the ALJ asked the vocational expert to assume

that the hypothetical individual could "carry out complex tasks if broken out into

smaller, simpler sections to be completed," which tracked Dr. Estock's opinion.

(*Compare* R. 47 *with* R. 68).  The ALJ did not include the other limitations

assessed by Dr. Estock in this area of functioning, including his assessment that

Sullivan "will benefit from written instructions because of limited ability to

concentrate and remember spoken directions" and that Sullivan "needs a well-

spaced work setting" and "may sometimes react to stress with anger or panic."  (R.

68).  Sullivan argues that the ALJ's hypothetical questions were improper because

they did not include these additional limitations.

Although it is a close question, the court is satisfied that the ALJ's

hypothetical questions adequately accounted for Sullivan's moderate restrictions in maintaining concentration, persistence, and pace.  The Eleventh Circuit has noted that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. ... Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence and pace when the questions otherwise implicitly account for these limitations." *Winschel*, 631 F.2d at 1180 (citations omitted); *see Szilvasi v. Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) (concluding that the ALJ properly accounted for the claimant's limitations in concentration, persistence, or pace when it posed hypothetical questions limiting the claimant to "simple repetitive tasks, with superficial interactions with others" and the medical evidence demonstrated that the claimant could perform such work); *Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 195 (11th Cir. 2012) ("[T]he ALJ found that the medical evidence demonstrated Rosario's ability, despite her limitations, to perform simple, routine, and repetitive tasks in an environment with only brief interactions with co-workers and the public. ... The hypothetical the ALJ posed to the vocational expert

restricted Rosario to the same type of tasks and thereby sufficiently accounted for Rosario's limitations in concentration, persistence, and pace.").

Here, although the ALJ did not expressly limit her hypothetical questions to include only simple tasks or unskilled work, she implicitly did so by limiting the hypotheticals to "complex tasks if broken down into simpler, smaller sections to be completed."  The medical evidence supports Sullivan's ability to perform such tasks, as Dr. Estock expressly opined that he could do so.  In addition, the vocational expert apparently understood the hypotheticals to encompass only unskilled work, because the jobs she identified were all unskilled.  (R. 48-49).  Accordingly, the ALJ's hypothetical questions adequately accounted for Sullivan's restrictions in maintaining concentration, persistence, and pace.

Citing Dr. Estock's opinion, Sullivan argues in his brief that the ALJ's "failure to include the restrictions of limitations on concentration and spoken instructions which required written instructions was improper." (Doc. 10 at 15).  Dr. Estock, however, did not *require* that Sullivan be given only written instructions; he merely stated that Sullivan would "benefit from" written instructions.  (R. 68).  Nowhere in his report did he state that Sullivan's limitations precluded spoken instructions and required that all of his instructions be in writing.

Sullivan also argues that the ALJ's hypotheticals were inadequate because they did not incorporate Dr. Estock's opinion that he needs a "well-spaced work setting" and "may sometimes react to stress with anger or panic."  Sullivan acknowledges that the ALJ included a restriction of "casual or non-intensive interaction with co-workers," but argues that this restriction does not accommodate his need for a well-spaced work setting.  (Doc. 10 at 15).  The court disagrees.  The court is satisfied that restricting the hypotheticals to "casual or non-intensive interaction with co-workers" adequately accounted for Dr. Estock's assessment that Sullivan needs a well-spaced work setting and sufficiently addressed his stress-related behavior.

In sum, the court concludes that the ALJ's hypothetical questions did not fully account for Sullivan's moderate restrictions in social functioning, specifically his limitation in responding appropriately to supervision and criticism, which could impact the vocational expert's testimony regarding the availability of jobs Sullivan is capable of performing.  Accordingly, the case is due to be remanded for submission of a more complete hypothetical question to the vocational expert that fully accounts for Sullivan's restrictions in social functioning.  The court also concludes that the ALJ's hypothetical questions adequately accounted for Sullivan's moderate restrictions in maintaining

concentration, persistence, and pace.  Nonetheless, because the case is otherwise due to be remanded, on remand the ALJ may want to consider whether the hypothetical question to the vocational expert should include any further restrictions related to Sullivan's limitations in this area of functioning, such as that he would benefit from written instructions.

**B.      The ALJ's Alleged Bias**

Sullivan also alleges that the ALJ was biased against him.  The court notes that Sullivan raised an allegation of bias when he requested review of the ALJ's decision by the Appeals Council.  In his request for review, he alleged that "the opinion of the ALJ is based on possibilities not evidence and illustrates a bias against claimants and this claimant."  (R. 12).  Sullivan makes the same allegation here, along with other allegations of bias by the ALJ.

Social Security Ruling 13-1p, 2013 WL 633939 (Jan. 29, 2013), discusses the Social Security Administration's procedures for addressing complaints of "unfairness, prejudice, partiality, bias, misconduct, or discrimination" by administrative law judges.  In pertinent part, SSR 13-1p states:

> If, in conjunction with request for review, the Appeals Council receives an allegation of ALJ unfairness, prejudice, partiality, or bias, the Appeals Council will review the claimant's allegations and hearing decision under the abuse of discretion standard. ...
> ...

In considering allegations of unfairness, prejudice, partiality, or bias by the ALJ, the Appeals Council reviews information in the claimant's administrative record to determine whether to consider the alleged actions an abuse of discretion. The Appeals Council relies solely on information in the administrative record in determining this issue. ...

After reviewing the administrative record to evaluate the allegations of unfairness, prejudice, partiality, or bias by the ALJ under the abuse of discretion standard, the Appeals Council will send the claimant a notice, order, or decision explaining that it has considered the allegation under the abuse of discretion standard and stating whether it found an abuse of discretion. ...

SSR 13-1p, 2013 WL 633939 at **3-4.

Here, the Appeals Council did not follow the procedures in SSR 13-1p for reviewing allegations of ALJ bias. Indeed, it does not appear that the Appeals Council reviewed Sullivan's allegation of bias at all, much less that it reviewed the allegation under an abuse of discretion standard. The Appeals Council's decision denying Sullivan's request for review of the ALJ's decision does not mention Sullivan's allegation of bias, and there is no separate "notice, order, or decision" in the record explaining that the Appeals Council considered the allegation under the abuse of discretion standard and stating whether it found an abuse of discretion. The Appeals Council either ignored or overlooked the allegation of ALJ bias.

Accordingly, because the Appeals Council did not review Sullivan's

20

allegation of ALJ bias, and because this case is otherwise due to be remanded, the court will not address the allegation here.  On remand, the Appeals Council should review the allegation of bias under the abuse of discretion standard and state whether it finds an abuse of discretion.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be reversed and remanded for further proceedings consistent with this opinion.  An appropriate order will be entered separately.

**DONE,** this the 18th day of December, 2015.

JOHN E. OTT
Chief United States Magistrate Judge

21